951 A.2d 1095 (2008)
401 N.J. Super. 539
Felipe HERNANDEZ, Plaintiff-Appellant,
v.
Carmen BAUGH, Defendant-Respondent.
No. A-5752-06T2
Superior Court of New Jersey, Appellate Division.
Argued May 21, 2008.
Decided July 30, 2008.
*1096 Edward H. Lee, Springfield, argued the cause for appellant (Pitman, Mindas, Grossman, Lee, Bross and Moore, attorneys; Mr. Lee, on the brief).
Patrick B. Minter, Morristown, argued the cause for respondent (Graham Curtin, attorneys; Christopher J. Carey, of counsel; Mr. Minter and Rachel R. Carter, on the brief).
Before Judges WEFING, PARKER and KOBLITZ.[1]
The opinion of the court was delivered by
WEFING, P.J.A.D.
Plaintiff Felipe Hernandez sued defendant for legal malpractice. Defendant moved for summary judgment in lieu of filing an answer. The trial court granted that motion, and plaintiff has appealed. After reviewing the record in light of the contentions advanced on appeal, we reverse and remand.
Plaintiff learned of an opportunity to purchase a car wash and automobile lubrication business, together with the real estate in Newark from which the business operated. Plaintiff contacted his uncle, Hugo Martinez, and the two men investigated the financial prospects of the opportunity. As part of that investigation, plaintiff began to work at the business as an unpaid employee, learning the day-to-day details of managing the enterprise.
Plaintiff and his uncle decided to move ahead with the transaction and negotiated with the owner, ultimately settling on a price of $1,200,000 for the real estate and $400,000 for the business. Plaintiff retained defendant to represent him in connection with the transaction and signed a retainer agreement on February 3, 2003; he paid her a retainer of $2,500.
Defendant prepared the necessary papers to form two corporations, Hernandez & Martinez, Inc., to own the real estate, and F & H, Inc. to own the business. She also attended to the closing of the transaction. According to the corporate papers, plaintiff was the president of each corporate entity, Hugo Martinez, the vice-president, and his wife, Aida Martinez, secretary. When stock was issued for these corporations, plaintiff was listed as a stockholder in Hernandez & Martinez, Inc. but not in F & H Inc. No agreement was prepared setting forth any understanding between plaintiff and his uncle as to the nature of plaintiff's interest in F & H, Inc., although plaintiff alleged he had on several occasions raised with defendant the issue of whether his interests were protected. Plaintiff said that at least one of these conversations took place in the presence of Hugo Martinez, but that his uncle told plaintiff to trust him and not to worry.
Plaintiff contributed $70,000 toward the purchase price of the real estate and the business, and the seller took back a mortgage for $600,000, secured by a guarantee of F & H, Inc. and the personal guarantees of plaintiff and Hugo Martinez. The real estate and the business were pledged as collateral for the mortgage.
*1097 Plaintiff alleged that the understanding he had with his uncle was that he was to manage the business and receive a weekly salary of $600. In addition, the business was to pay his monthly automobile payment of $639 and his automobile insurance, his expenses for maintaining, repairing and fueling his car and his cell phone costs. Plaintiff contended that they had also agreed that when the business was on a firm footing, plaintiff would be paid for the time he spent as an unpaid employee before the closing.
The closing took place in April 2003, and plaintiff worked full time as the manager until November 2003, when the Martinezes removed him and deprived him of any access to the business. Plaintiff promptly filed suit in the Chancery Division, seeking to establish and protect his interest in the business. That litigation was eventually settled with the Martinezes paying $325,000 to plaintiff. Paragraph 14 of the Stipulation of Settlement provided in pertinent part, "The parties deem this settlement to be fair and reasonable and have arrived at this settlement in arm's length negotiations taking into account all relevant factors, present or potential."
Plaintiff then commenced this legal malpractice action, alleging that defendant had failed to act to protect his interest in the business and, as a result, he received less in the settlement than he was otherwise entitled to. Defendant's pre-answer motion relied on Puder v. Buechel, 183 N.J. 428, 874 A.2d 534 (2005), contending that plaintiff, having acknowledged that the settlement was fair and reasonable, was precluded from seeking further damages from defendant. The trial court agreed, and this appeal followed.
In our judgment, Puder is distinguishable. In that case, defendant was unhappy with the settlement negotiated by her attorney in a matrimonial action. 183 N.J. at 432, 874 A.2d 534. Proceedings commenced to enforce that settlement. Ibid. After several days of testimony in the enforcement proceeding, but before the trial court decided the matter, defendant settled the matter on essentially the same terms as the first settlement. Id. at 433, 874 A.2d 534. In the course of putting this settlement on the record, defendant told the court that the settlement was fair and reasonable. Id. at 433-35, 874 A.2d 534. Defendant then sued her attorney for malpractice, seeking to recover what she alleged she should have received in the marital action but did not due to the attorney's malpractice. Id. at 435, 874 A.2d 534. The Court rejected this attempt and held that defendant was bound by her representation to the trial court that the settlement was fair and reasonable; the Court refused to permit her in a separate action to contend that the settlement was inadequate. Ibid.
Here, plaintiff claims that he was compelled to settle his Chancery action because the negligence of defendant deprived him of the proofs he needed to prevail. We consider plaintiff's claim that defendant was negligent in representing plaintiff in connection with this transaction to be encompassed within the phrase, "taking into consideration all factors past or potential," which modifies the statement that the settlement was fair and reasonable. Among the factors that plaintiff had to take into consideration in negotiating the settlement were the legal hurdles he faced in proving that he held an ownership interest in F & H, Inc.; those hurdles, he contended, were the result of defendant's negligence. Certainly at this stage of the proceedings, plaintiff was entitled to have this sentence interpreted to mean that he considered the settlement reasonable in light of the apparent weaknesses in his case, and not that he considered $325,000 a fair and reasonable estimate of his interest in both companies. Printing Mart-Morristown *1098 v. Sharp Electronics Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989).
Finally, for the sake of completeness, we note in conclusion that the record before us contains a reference to another suit pending against defendant, this one by the Martinezes, who apparently contend that defendant was negligent in representing them in connection with this transaction and that as a result of that negligence, they had to pay $325,000 to settle plaintiff's claim. We are informed that defendant made a similar motion for judgment in that case, on the same theory. That motion was heard by a different judge and was denied. We find defendant's attempt to distinguish the two different outcomes on the basis that in the one, the Martinezes had to pay money and in this, plaintiff received money, entirely unpersuasive.
The order under review is reversed, and the matter is remanded for further proceedings.
NOTES
[1] The parties have consented to the addition of Judge Koblitz in the participation in the decision of this case.